# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN J. ALEXANDER, <br><br> Plaintiff, <br><br> v. <br><br> GARZA, et al., <br><br> Defendants. | Case No.: 1:20-cv-01486-SAB (PC) <br><br> ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION <br><br> FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS <br><br> (ECF No. 17) |

Plaintiff Julian J. Alexander is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's second amended complaint, filed March 25, 2021.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## SUMMARY OF ALLEGATIONS

The Court accepts Plaintiff's allegations in his complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

While Plaintiff was housed at Corcoran State Prison in the year 2018, he suffered from bipolar disorder. The condition was marked by symptoms such as severe depression, episodes of mania, delusional states, racing thoughts, and suicidal ideations. Plaintiff was under the treatment of the mental health unit. Plaintiff was just released from the inpatient program within the mental health unit, just two week prior the incidents at issue in this action.

Plaintiff also has an extensive history of self-harm and crisis episodes, such as rage, uncontrollable weeping, and extreme anxiety.

In September 2018, Plaintiff was housed in cell 3A-04, which is in the administrative segregation unit. On or about September 4, 2018, Plaintiff's condition and mental health began to decompensate due to escalating tensions with the unit correctional staff.

Plaintiff began to voice his complaints about the unit staff's gross negligence and extreme acts of misconduct, including refusing to provide CDCR 602 appeal forms, spraying noncombative inmates and lack of decontamination, refusal to feed inmates, and destroying personal property. Defendant

2

Perez would frequently take it upon himself to torture inmates he was displeased with by pepper spraying them. Defendants Garza and Hackworth would stand by and watch the misconduct.

Plaintiff began to document the Defendants' actions on or about September 4, 2018, and that is when he became a target. Plaintiff confronted Defendants Garza, Hackworth, Perez, Contreas and Bonilla about their misconduct. Plaintiff's advances were met with extreme contempt and threats of physical harm which was intended to prevent Plaintiff from exposing their misconduct. Based on the misconduct, Plaintiff was stressed to the point that he was suicidal. Plaintiff expressed his suicidal ideations. Plaintiff also broke his cell window in an attempt to force Defendants Garza, Hackworth, Perez, Contreas, and Bonilla to follow policy and remove Plaintiff from his cell for a psychiatric evaluation. However, Defendants refused to allow Plaintiff to be taken from his cell or to call a psychologist. Plaintiff's requests were made over a period of four days, to no avail. Instead, a rolling shield made of clear plexiglass was placed in front of Plaintiff's cell, and Defendants Bonilla and Contreas while provoking him by saying "go ahead cut. If that's what you want to do, … do it."

Defendants Garza and Hackworth both were absolutely aware of everything was taking place because the Plaintiff and his peers would repeatedly yell out to them: "Do you job, were [sic] going to write this up. And watch, your [sic] going to get sued." Plaintiff's frustration escalated to the point that he began to curse the Defendants, and Defendants Perez, Bonilla, Contreas, and Hackworth would say "put some bass in your voice. And keep talk'n and your [sic] going to end up getting rucked up…But go ahead cut your writ, push paper work (staff complaints) we really don't give a shit. Keep at it, and you guys will get yours." Plaintiff was being threatened with physical and mental harm for utilizing the appeal system.

Plaintiff broke his cell window on September 4, 2018. Then, on September 7, 2018, Plaintiff did exactly what Defendants Perez, Contreas, and Bonilla had repeatedly advised him to do. Plaintiff was experiencing deep frustration, embarrassment, stress, and deep rage. When Plaintiff was brought out of the shower he took a shard of glass and proceeded to lacerate his left arm. After showing Defendant Contreas and stated he was suicidal, Defendants Bonilla and Perez attempted to pepper spray Plaintiff, despite the fact that he was no longer engaged in self-injurious behavior. Plaintiff avoided being pepper sprayed by taking cover behind the upper tier shower curtain. Plaintiff later

3

went to the front shower and told floor staff that he was still suicidal. Defendants Garza, Perez, Contreas, and Bonilla laughed at Plaintiff. Defendants took turn provoking Plaintiff and threatening him with physical harm. Defendant Garza failed in his supervisory role to prevent his subordinates from repeatedly engaging in misconduct. These events took place over a period of eight hours on September 7, 2018. Plaintiff was left in the shower, with his bleeding wounds exposed, from approximately 2:30 p.m. until 7:00 a.m. the next day.

When Defendant Hackworth started his shift, he continued with the threats and antagonistic behavior. Defendant Hackworth and Plaintiff exchanged obscenities and Hackworth would say "your [sic] just a little bitch …" When Plaintiff would respond, Hackworth would say, "well bring your ass out then, 'so we can drag you back to your cell.'" Defendant Hackworth refused to contact mental health in order to have Plaintiff properly assessed, evaluated and admitted to the mental health crisis unit, despite Plaintiff's pleas that he was suicidal. When Plaintiff was eventually released from the shower, he was returned to his same cell that had shards of glass inside.

Defendants Garza, Hackworth, Perez, Contreas, and Bonilla knew or should have known that Plaintiff was suffering from a mental health crisis episode because he remained in his cell with a window broken for a period of three consecutive days after telling Defendants that he was a danger to himself and suicidal. Plaintiff remained in the same cell until September 10, 2018, when he cut himself again and was relocated to a different cell.

Defendants Perez, Bonilla, and Contreas personally threatened Plaintiff with actual and physical harm because he was doing what he was advised to by title 15 of the California Code of Regulations in filing staff complaints and routine appeals. Defendants Garza and Hackworth personally instruct unit staff to hide all the complaint and appeal forms. The forms would then suddenly appear after Plaintiff would refuse to hand over handcuffs. Defendants Perez, Contreas, and Bonilla would also refuse to sign all of Plaintiff's outgoing CDCR Form 22 requests. When Plaintiff requested a signature, he would be told, "o! you two will get what you got coming. We'll fuck you up." Had Defendants Garza, Hackworth, Contreas, and Bonilla not deliberately impended Plaintiff's access to the appeal system, the numerous events would have been avoided. All Defendants refused to allow inmates to drop appeals at the 602/appeal lock box outside of Garza and Hackworth's office.

4

# III.

# DISCUSSION

### A. Mental Health Treatment

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

Negligence or medical malpractice do not rise to the level of deliberate indifference. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

It has long been clear that an inmate's vulnerability to suicide constitutes a serious medical condition. See, e.g., Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999) ("The right to have

medical needs addressed includes the right to be protected from a known risk of suicide."); Colburn v. Upper Darby Township, 946 F.2d 1017, 1023 (3rd Cir. 1991); Garrett v. Grant, CV 18-2137 PSG(JC), 2018 WL 3533459, at *5 (C.D. Cal. July 18, 2018) (noting that, to show deliberate indifference to a prisoner's suicide risk, a plaintiff must allege that a defendant actually knew that the inmate was "in substantial danger" of "imminent suicide" and failed to take reasonable precautionary measures). Thus, a mentally ill prisoner may establish unconstitutional treatment on behalf of prison officials by showing that officials have been deliberately indifferent to his serious medical needs. See Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994); see also Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements analyzed as part of general health care requirements); see, e.g., Conn v. City of Reno, 591 F.3d 1081, 1094 (9th Cir. 2010) (a heightened suicide risk or an attempted suicide is a serious medical need; reversing grant of summary judgment to transporting police officers where plaintiffs presented sufficient evidence for a jury to find that the decedent's pre-suicidal actions objectively evidenced a serious medical need), reinstated as modified by 658 F.3d 897 (9th Cir. 2011); Capps v. Atiyeh, 559 F. Supp. 894, 916 (D. Ore. 1983) (inmate suffers pain under the Eighth Amendment whenever he must endure untreated serious mental illness for any appreciable length of time).

Here, liberally construed, Plaintiff's allegations are sufficient to give rise to a cognizable deliberate indifference claim to his mental health against Defendants Hackworth, Garza, Perez, Contreas, and Bonilla.

**B.      Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the

protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Based on Plaintiff's contentions that Defendants Perez, Bonilla, Contreas, and Hackworth threatened physical harm if he continued to file complaints and grievance is sufficient, at the pleading stage, to state a cognizable claim for retaliation.

### C. Inmate Appeal Process

Prisoners do not have "a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Prison officials are not required under federal law to process inmate grievances in any specific way.

While potentially relevant to the determination of whether the administrative remedies were exhausted, Plaintiff's claim that Defendants Perez, Bonilla, Contreas, Garza, and Hackworth interfered, denied and/or refused to process his grievances do not state a cognizable claim for a violation of his due process rights because there is no right to a particular grievance process or response. See, e.g., Towner v. Knowles, No. 2:08-cv-2823 LKK EFB P, 2009 WL 4281999, at *2, 2009 U.S. Dist. LEXIS 108469 (E.D. Cal. Nov. 20, 2009) (plaintiff failed to state claims that would indicate a deprivation of his federal rights after defendant allegedly screened out his inmate appeals without any basis); Williams v. Cate, No. 1:09-cv-0468 OWW YNP PC, 2009 WL 3789597, at *6, 2009 U.S. Dist. LEXIS 107920 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims."). Accordingly, Plaintiff's claims that Defendants Garza and Hackworth interfered with, denied, or failed to process his grievances are non-cognizable as a matter of law, and must be dismissed without leave to amend.

### D. Further Leave to Amend

Because Plaintiff has had two opportunities to present his claims, the Court finds that further amendment would be futile. Zucco Partners v. LLC. v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (Where a "plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." (quotations and citations omitted). Therefore, the Court recommends that this

7

action proceed on the cognizable claims stated above, and all other claims and Defendants be dismissed, without leave to amend, for failure to state a cognizable claim for relief.

## IV.
## ORDER AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's deliberate indifference claim against Defendants Hackworth, Garza, Perez, Contreas, and Bonilla, and on his retaliation claim against Defendants Perez, Bonilla, Contreas, and Hackworth; and

2. All other claims and Defendants be dismissed from the action for failure to state a cognizable claim for relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __April 29, 2021__                    _____
                                              UNITED STATES MAGISTRATE JUDGE